UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Crystal Z.,

     Plaintiff,

     v.                                                    Civil Action No. 2:19–cv–24–jmc

Commissioner of Social Security,

     Defendant.

## OPINION AND ORDER
(Docs. 14, 16)

Plaintiff Crystal Z. brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the

Commissioner of Social Security denying her application for Disability Insurance

Benefits (DIB).  Pending before the Court are Plaintiff's motion to reverse the

Commissioner's decision (Doc. 14), and the Commissioner's motion to affirm the

same (Doc. 16).  For the reasons stated below, Plaintiff's motion is GRANTED, in

part; the Commissioner's motion is DENIED; and the matter is REMANDED for

further proceedings and a new decision.

## Background

Plaintiff was 28 years old on her alleged disability onset date of July 19,

2016.  She completed her GED, and has work experience as an office clerk, a data

entry clerk, a chiropractor assistant, a laundry laborer, and a healthcare

specialist for the state of Vermont.  She is married, and lives in Fairfax with her husband, son, and stepson.

Plaintiff has chronic pain syndrome and a longstanding history of back pain.  (AR 511.)  In February 2015, she underwent back surgery, specifically a laminectomy and posterior lateral fusion at the L5-S1 level.  (AR 286–89.)  Thereafter, her pain lessened and she thus returned to work.  (AR 42.)  Less than two years after the surgery, however, her pain returned, and she was unable to work.  (AR 52, 313, 511.)  Plaintiff stopped working in July 2016 because her pain prevented her from sitting for longer than one hour at a time and limited her ability to stand, walk, lift, twist, and rise from a seated position.  (AR 64–65, 72, 202, 212–13, 217.)  To alleviate her pain, Plaintiff lies down, takes breaks throughout the day, and takes narcotic pain medication to help her sleep.  (AR 43, 56, 64–65, 511.)  She has tried physical therapy, but it "severely exacerbated" her pain.  (AR 511.)  She has undergone epidural injections but sometimes encounters problems obtaining insurance coverage for them.  (AR 42–43, 55.)

Plaintiff has also struggled with anxiety and panic attacks since she was 12 years old; and she suffers from depression and has been diagnosed with hypochondriasis (a mental disorder characterized by excessive fear of or preoccupation with a serious illness, despite medical testing and reassurance to the contrary).  (AR 485.)  Her mental health has significantly declined since her chronic pain has increased.  (*Id.*; AR 44.)

In a September 2016 Function Report, Plaintiff reported that she cannot sit or stand for longer than 15 minutes without "an immense amount of pain in [her] mid[-]to[-]low back and hips." (AR 212.) She stated that, although she cares for her two-year old son at home, she often lies on the couch to relieve her pain (AR 213); she is unable to cook meals that require standing for longer than 10 minutes (AR 214); and she needs to take breaks when washing dishes (*id*.). Plaintiff further reported that she "hardly ever" goes outside; she is "unable to do activities"; and, although she can drive and go food shopping once a week, her husband brings her to the store, does the lifting, and pushes the cart. (AR 215.) At the October 2017 administrative hearing, Plaintiff testified that her sister and mother help her care for her son; and she is unable to pick up her son or bathe him. (AR 59, 61.) She also testified that she cannot do household chores without pain, and if she attempts to do the dishes or vacuum, she needs to lie down after. (AR 60.)

In June 2016, Plaintiff filed her application for DIB, alleging that she has been unable to work since July 19, 2016 due to anxiety, depression, back pain, and hip pain. (AR 202.) The application was denied initially and upon reconsideration, and Plaintiff timely requested an administrative hearing. On October 5, 2017, Administrative Law Judge (ALJ) Joshua Menard conducted a hearing on the application. (AR 36–81.) Plaintiff appeared and testified, and was represented by counsel. A vocational expert (VE) also testified at the hearing. On February 16, 2018, the ALJ issued a decision finding that Plaintiff

was not disabled under the Social Security Act from her alleged disability onset date through the date of the decision.  (AR 20–31.)  Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–6.)  Having exhausted her administrative remedies, Plaintiff timely filed the Complaint in this action on February 12, 2019.  (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations

based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Menard first determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of July 19, 2016.  (AR 22.)  At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, anxiety disorder, and depressive disorder.  (AR 23.)  Conversely, the ALJ found that Plaintiff's obesity was a "nonsevere impairment" but stated that he nonetheless considered it in formulating Plaintiff's RFC.  (*Id.*)  At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment.  (*Id.*)  Next, the ALJ determined that Plaintiff had the RFC to perform "light work," as defined in 20 C.F.R. §

404.1567(b), except that she "require[d] the ability to change position every hour for [three to five] minutes;" she could "frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally stoop; and frequently crouch;" and she was "limited to simple, routine tasks." (AR 25.) Given this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as an office clerk, a data entry clerk, a chiropractor assistant, and a laundry laborer. (AR 29.) Based on testimony from the VE, however, the ALJ determined that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of market retail worker, order caller, and tanning salon attendant. (AR 30.) The ALJ concluded that Plaintiff had not been under a disability from her alleged disability onset date of July 19, 2016 through the date of the decision. (AR 31.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied."  *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff argues that the ALJ erred in failing to give proper weight to the opinions of treating physician Michael Barnum, MD.  (Docs. 14, 14-1, 19.)  Given this alleged error, Plaintiff seeks a remand for calculation of benefits.  The Commissioner responds that the ALJ's decision should be affirmed because it is supported by substantial evidence and it properly assesses Dr. Barnum's opinions

in the context of the entire medical record.  (Doc. 16.)  As discussed below, the

Court finds error in the ALJ's analysis of the opinions of Dr. Barnum, requiring

remand for further proceedings and a new decision.

## I.     ALJ's Analysis of the Opinions of Treating Physician Dr. Barnum

Dr. Barnum was Plaintiff's treating orthopedic surgeon during the alleged

disability period.  He began seeing Plaintiff in January 2015, when Plaintiff

presented with complaints of sharp and constant low back pain that did not

improve with medical management and physical therapy.  (AR 278.)  At

Plaintiff's initial appointment, Dr. Barnum noted that x-rays showed "severe

degenerative changes at the L5-S1 level with increased bone density."  (AR 280.)

Given this and other findings, in February 2015, Dr. Barnum performed a

laminectomy and posterior lateral fusion surgery at the L5-S1 level on Plaintiff.

(AR 286.)  For at least two years thereafter, Dr. Barnum saw Plaintiff in follow-

up treatment.  (*See, e.g.*, AR 306–08, 515–17, 582–84, 590–93.)  In a September 6,

2017 Medical Source Statement of Ability to Do Work-Related Activities,

Dr. Barnum opined that Plaintiff cannot lift more than 20 pounds and "has

[lower back pain] that would affect [her ability to do] manual labor positions."

(AR 686.)  Dr. Barnum also opined that Plaintiff can lift/carry no more than

10 pounds occasionally and less than 10 pounds frequently; Plaintiff can stand

and/or walk for only two to six hours in an eight-hour workday; Plaintiff can sit

for two to six hours in an eight-hour workday but needs to stand and walk

around for 10 minutes after sitting for an hour; and Plaintiff can reach for only

one-third of an eight-hour workday and cannot perform repetitive reaching. (AR 688–90.)

The regulations in effect at the time Plaintiff filed her claim provide that the opinions of treating physicians like Dr. Barnum are generally entitled to deference over opinions provided by nontreating sources including nonexamining agency consultants and examining medical consultants.[1] *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The [Social Security Administration] recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant."). The so-called "treating physician rule" provides that a treating source's opinions on the nature and severity of a claimant's functional limitations are entitled to "controlling weight" if they are "well[] supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567–69

---

[1] Some of the regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those new regulations apply only to claims "filed on or after March 27, 2017," however, and therefore not to Plaintiff's claim here, which was filed in June 2016. *Smith v. Comm'r*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where, as here, a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations." *Rodriguez v. Colvin*, No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); *see Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, 66178, 2016 WL 5341732 n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) ("The revisions include redefining several key terms related to evidence, revising our rules about acceptable medical sources . . . , revising how we consider and articulate our consideration of medical opinions and prior administrative medical findings, revising our rules about medical consultants . . . and psychological consultants . . . , revising our rules about treating sources, and reorganizing our evidence regulations for ease of use.").

(2d Cir. 1993).  If the ALJ decides a treating source's opinions are not entitled to controlling weight, it must be determined how much weight, if any, to give those opinions.  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  In making this decision, the ALJ "must 'explicitly consider' the following, nonexclusive 'Burgess factors': '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion[s]; (3) the consistency of the opinion[s] with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Id.* at 95–96 (first alteration in original) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)); *see* 20 C.F.R. §§ 404.1527(c), 404.927(c); *Greek*, 802 F.3d at 375 ("[E]ven when a treating physician's opinion is not given controlling weight, [Social Security Administration] regulations require the ALJ to consider several factors in determining how much weight the opinion should receive.").  If the ALJ gives less than controlling weight to a treating source's opinions, he or she must provide "good reasons" in support of that decision.  *Byrne v. Berryhill*, 752 F. App'x 96, 98 (2d Cir. 2019) ("After considering the[] [regulatory] factors, the ALJ must provide a meaningful explanation for assigning a particular weight to a treating physician's opinion.  Failure to provide such good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." (internal quotation marks omitted)); *see Messina v. Comm'r of Soc. Sec. Admin.*, 747 F. App'x 11, 15 (2d Cir. 2018); *Burgess v. Astrue*, 537 F.3d 117, 129–30 (2d Cir. 2008); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam).

In this case, the ALJ gave "little weight" to the opinions of treating physician Dr. Barnum on the grounds that these opinions are "overly restrictive and inconsistent with the record, including [Dr. Barnum's] own treatment notes." (AR 28.)  The ALJ explained: "The record . . . shows [that Plaintiff had] greater ability than opined [by Dr. Barnum]."  (*Id.*)  Applying the treating physician rule to the ALJ's analysis of Dr. Barnum's opinions, the Court finds that the ALJ made several errors.  First, the ALJ failed to address the frequency, length, nature, and extent of Dr. Barnum's treating relationship with Plaintiff, despite these being significant factors, as discussed above.  *See* 20 C.F.R. § 404.1527(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.").  Second, the ALJ did not mention that Dr. Barnum is a specialist (an orthopedic surgeon) who opined about medical issues related to his area of specialty (Plaintiff's ability to lift/carry, stand/walk, sit, and reach).  *Id.* at § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

Third, substantial evidence does not support the ALJ's finding that Dr. Barnum's own treatment notes are inconsistent with his opinions.  (*See* AR 28.)  At various dates during the alleged disability period, Dr. Barnum's treatment notes include notations that Plaintiff experienced: "trouble

sitting/standing for [a] prolonged time" (AR 313), "tenderness [to] palpation of the paralumbar region" (AR 315; *see also* AR 588), "[s]evere isolated degenerative changes at the L5-S1 level" (AR 345), "left lower back pain with radiation to left hip and posterior thigh" (AR 588), "positive single leg stance" (pain provoked by standing on one leg) and "positive Faber" (groin or buttock pain) on the left (*id.*), "tenderness [to] palpation [of the] lumbosacral junction and left [sacroiliac] joint [and] [r]eproducible pain with extension and positive single leg stance on the left" (AR 592), "tenderness [to] palpation of the C7 spinous process and parascapular musculature bilaterally" (*id.*), and "increasing mechanical low back pain mostly on the left side with radiation to left hip buttocks and posterior thigh" (*id.*). These and other notations contained in his treatment notes support Dr. Barnum's opinions regarding Plaintiff's limitations in sitting, standing, reaching, and lifting/carrying.  (*See* AR 686, 688–90.)  Also noteworthy, Dr. Barnum consistently observed that Plaintiff showed no Waddell's signs,[2] meaning she was not malingering or exaggerating her symptoms.  (*See* AR 314, 477, 588.)

Finally, substantial evidence does not support the ALJ's finding that Dr. Barnum's opinions are inconsistent with the record as a whole.  (*See* AR 28.) Throughout the record, nearly every treating or examining provider observed signs of pain or discomfort in Plaintiff when she moved from a seated to a

---

[2] Waddell's signs were developed "to identify patients with low back pain who were likely to experience a poor surgical outcome from lower back surgery."  Ryan S. D'Souza & Luke Law, *Waddell Sign*, STATPEARLS, *available at* https://www.ncbi.nlm.nih.gov/books/NBK519492/ (last updated Feb. 14, 2020).  Waddell's signs can be used to "identify malingering in patients . . . [and to] identify[] psychogenic components in other non-lumbar pain syndromes."  *Id.*

standing position, when she walked, or upon palpation to her spine.  For example, in June 2016, treating provider Molly Somaini, PA-C, recorded that Plaintiff "[w]alks with an antalgic gait." (AR 443.)  And in July 2016, Somaini noted that Plaintiff was "[e]xperiencing pain," "[w]alk[ed] with an antalgic gait," and had "[tenderness to palpation] across [the] lower back." (AR 458.)  Also in July 2016, treating provider David Simcoe, DO, observed that Plaintiff "[w]alk[ed] with a slow gait," had a "stooped" posture, exhibited "tenderness to palpation over the spine," and was in pain "[a]s indicated by changing positions often and facial grimace." (AR 455.)  In August 2016, consulting psychologist Raquel Lefebvre recorded that Plaintiff "appeared to be in significant visible pain when she walked, sat[,] and went from sitting to standing." (AR 472.)  Like Dr. Barnum, Lefebvre noted that "[t]here was no evidence to suggest that [Plaintiff] was malingering or intentionally not being truthful." (AR 473.)  In September 2016, PA-C Somaini wrote that Plaintiff had worse pain "with prolonged standing or sitting" (AR 507); and in November 2016, she recorded that Plaintiff had "[d]iscomfort with movement" and "walk[ed] with an antalgic gait" (AR 532.  In October 2016, treating provider Michelle Kearney, PA-C, similarly noted that Plaintiff "experience[ed] pain," which was "indicated by changing positions often," and "[w]alk[ed] with a slightly antalgic gait." (AR 512.)  In March 2017, treating rheumatologist Scott Legunn, MD, recorded that Plaintiff had "[t]ender lumbar paraspinal muscles with discomfort at the [sacroiliac] joints," and that the FABER test "elicited pain in the lumbar spine." (AR 604.)

At least two other treating providers made similar findings during the alleged disability period.  (*See, e.g.*, AR 485 (Meghan Lewellen, MSW, LICSW, recording that Plaintiff "grimaces occasionally as she shifts her sitting position"), 523 (Suzan White, DO, recording that Plaintiff "[a]ppears to be in mild-moderate distress and pain [a]s indicated by changing positions often," and "[w]alks with a slightly antalgic gait").)  Physical therapy notes make similar findings, recording that Plaintiff exhibited signs of: pain, dysfunction in the sacroiliac (SI) joints, decreased range of motion and strength, altered posture and gait, decline in function, postural changes that appear to restrict left SI motion eliciting pain, muscle tightness, very restricted range of motion in all directions, frequent change in position from sit/stand during evaluation, mainly side sitting to right/left, moving cautiously in the room and using furniture for support, and inability to stand erect.  (AR 491, 569.)

These treatment notes are consistent with Dr. Barnum's opinions, particularly the opinion that Plaintiff needed to stand and walk around for 10 minutes every hour, to relieve pain or discomfort in her lower back.  (AR 689; *see* AR 686.)  But instead of crediting this evidence in his analysis of Dr. Barnum's opinions, the ALJ merely mentioned them in passing—without citing to the record or noting the names of the providers—and then dismissed them on the grounds that "[Plaintiff] otherwise has intact strength, sensation, and reflexes"; and "has good balance and normal range of motion of the extremities."  (AR 28.)  First, there is evidence (cited above) that Plaintiff did not

in fact have intact strength, range of motion, and balance at some appointments; but even if she did, it is not for the ALJ to determine that a person could not exhibit normal function in those areas while also being posturally limited due to back pain, as opined by Dr. Barnum.  *See Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 121 (2d Cir. 2018) ("Neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion." (quoting *Shaw*, 221 F.3d at 134)); *Alexander v. Comm'r of Soc. Sec.*, No. 5:14-cv-00039, 2014 WL 7392112, at *8 (D. Vt. Dec. 29, 2014) ("[A]n ALJ is not qualified to analyze raw medical data, and must interpret the medical evidence through the expert opinion of a physician." (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998))).  Second, it was improper for the ALJ to "recite only the evidence that support[ed] his conclusion while ignoring contrary evidence."  *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016); *see Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) ("Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, he cannot pick and choose evidence that supports a particular conclusion." (citation omitted)).

The ALJ also explained his decision to give little weight to Dr. Barnum's opinions by stating that Plaintiff "can carry a basket of dry clothes, and mop and vacuum with breaks."  (AR 28.)  But Plaintiff's ability to "carry a basket of dry clothes" is not inconsistent with Dr. Barnum's opinion that Plaintiff could never lift over 20 pounds, and could lift 10 pounds occasionally and less than 10 pounds

frequently.  (AR 686, 688).  Nor is Plaintiff's ability to "mop and vacuum with breaks" inconsistent with Dr. Barnum's opinion that Plaintiff can reach for only one-third of the workday.  (AR 690.)  *See Maskell v. Berryhill*, Case No. 5:16-cv-60, 2017 WL 2779638, at *8 (D. Vt. June 27, 2017) ("[T]he 'ALJ did not explain how the performance of these limited activities . . . translates into the ability to perform substantial gainful work . . . in a typical competitive workplace environment.'" (all but first alteration in original) (quoting *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015))); *see Johnson v. Comm'r of Soc. Sec.*, Civil Action No. 2:13-cv-217, 2014 WL 2118444, at *6 (D. Vt. May 21, 2014) ("[E]ven assuming [the plaintiff] was able to do these activities, she still could be limited in her ability to do work-related functions to the extent opined by [the treating physician].").  Moreover, the Second Circuit has long held that a claimant need not be an invalid, incapable of performing any daily activities, in order to receive disability benefits.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989) ("When a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.").

Despite the consistency between Dr. Barnum's opinions and the treatment notes of multiple different medical providers including Dr. Barnum, the ALJ opted to give "little weight" to Dr. Barnum's opinions and "great weight" to the opinions of nonexamining agency consultant Geoffrey Knisely, MD.  (AR 28.)  In

December 2016, Dr. Knisely completed an evaluation of Plaintiff wherein he opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; could sit, stand, and walk for about six hours in an eight-hour workday; and would need to change her position for an aggregate of three-to-five minutes per hour.  (AR 106.)  Noting that Dr. Knisely is an "acceptable medical source[] who [is] familiar with Social Security policy and had the opportunity to review [Plaintiff's] record," the ALJ gave great weight to these opinions on the grounds that they are "generally consistent with the record as a whole."  (AR 28.)

Having never seen or treated Plaintiff, however, Dr. Knisely's opinions should not have been given more weight than Dr. Barnum's without good reason. *See Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that . . . reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability." (internal quotation marks omitted)).  This is particularly true given that Dr. Knisely made his opinions in December 2016, more than a year before the ALJ's decision (AR 31), nine months before Dr. Barnum issued his opinions (AR 691), and one month before MRI results were added to the record in January 2017 (AR 651).[3]  The Second Circuit has held that, where, as here, it is unclear whether an agency consultant reviewed "all of [the plaintiff's] relevant medical information," the

---

[3] The January 2017 MRI revealed abnormalities in Plaintiff's lumbar spine, including "[b]road-based disc protrusion indents [in the] ventral CSF space, contributing to mild central canal stenosis," and "[l]eft far lateral disc protrusion, [which] abuts transforaminal segment of the left L5 nerve root" (*id.*), leading Dr. Barnum to contemplate fusion surgery (AR 586).  In a February 2017 treatment note, Dr. Barnum stated that, although the January 2017 MRI "did not reveal any significant neural compromise," it showed "a very small far lateral disc herniation [on the] left side L4-5."  (AR 588.)

consultant's opinion is not supported by the evidence of record, as required to override the opinion of a treating physician.  *Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir. 2011).  Here, it is clear that agency consultant Dr. Knisely had not reviewed all of the relevant medical information prior to preparing his evaluation of Plaintiff.[4]

Accordingly, the ALJ erred in his analysis of the opinions of treating physician Dr. Barnum, requiring remand.  *See Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ[]s that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

## II.    Remand for Further Proceedings or Calculation of Benefits

Plaintiff argues that the record shows that, "by the proper application of the Commissioner's regulations[,] [Plaintiff] would have been found disabled," and thus, the claim should be remanded solely for a calculation of benefits rather than for further proceedings and a new decision.  (Doc. 14-1 at 23.)  The Court disagrees.

In cases where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," reversal for a

---

[4] Plaintiff also argues that the ALJ should have given less weight to Dr. Knisely's opinions because his evaluation "is simply an opinion that 'no adjustments are warranted'" to the original assessment of a non-medical disability examiner, specifically single decisionmaker (SDM) Margie Morley.  (Doc. 14-1 at 20 (citing AR 92–93, 102–03, 106); *see* Doc. 19 at 7 (citing *Rivera v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 486, 491 (S.D.N.Y. 2019)).)  But the fact that Dr. Knisely expressed his agreement with the assessment of SDM Morley does not in itself diminish the value of Dr. Knisely's evaluation.  (AR 105–07.)

calculation of benefits may be appropriate.  *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).  Courts have reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further proceedings "would serve no purpose."  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  Where, however, there are gaps in the administrative record or the ALJ has applied an improper legal standard, it is more appropriate to remand for further proceedings and a new decision.  *Rosa*, 168 F.3d at 82–83; *see also Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Here, it cannot be said that a remand for further proceedings would serve no purpose.  Once the ALJ properly analyzes the medical opinions, a new RFC determination will require further testimony from a VE about what, if any, jobs Plaintiff can do and whether they exist in significant numbers in the national economy.  Therefore, the claim must be remanded for further proceedings rather than for a calculation of benefits.

## Conclusion

For these reasons, the Court GRANTS Plaintiff's motion (Doc. 14), in part; DENIES the Commissioner's motion (Doc. 16); and REMANDS for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 24th day of April 2020.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge